417 P.2d 720

Max ENGLER, a married person, dealing with his sole and separate property, Appellant,

v.

Stanley L. SAINER and Antonia J. Sainer, husband and wife, W. D. Arrington and Nora Arrington, husband and wife, Dorothy Nelson and J. J. Nelson, husband and wife, Phoenix Title & Trust Company, an Arizona corporation, Thomas E. Woodruff and Pauline B. Woodruff, husband and wife, Appellees.

I CA–CIV 193.

Court of Appeals of Arizona.

Sept. 7, 1966.

Rehearing Denied Oct. 3, 1966.

Lester Engler, Phoenix, for appellant.

Charles A. Stanecker, Phoenix, for appellees.

CAMERON, Judge.

This appeal is from a judgment for the defendant Phoenix Title and Trust Company and others, upon motion made, after the presentation of plaintiff's case. The

matter was tried before the court without a jury.

We are called upon to determine what duty, if any, the defendant Phoenix Title and Trust Company had to notify the plaintiff of the fact that a check paid to cure a default under a contract of sale had been returned and not honored by the bank when the said defendant had previously on two occasions gratuitously supplied plaintiff with information concerning the payments after notice of default.

The facts necessary for a determination of this case are as follows: The appellant, Max Engler, purchased, on 1 March 1960, a note secured by a realty mortgage in the amount of $2,500.00 executed by W. D. and Nora Arrington, which was by its terms subject and inferior to a prior contract for sale of the same realty between one Stanley Sainer as seller and W. D. and Nora Arrington as buyers. Sainer later assigned his interest in the contract to one Dorothy Nelson.

The appellee, Phoenix Title and Trust Company, was the escrow and collection agent for the contract of sale of the realty to the Arringtons. A quit-claim deed executed by the Arringtons was deposited in escrow as required by the escrow agreement, along with the deed of the seller. Subsequent to this contract of sale, but prior to the execution of the mortgage now held by Engler, an additional quit-claim deed was executed by the Arringtons in favor of one William K. Davis. This quit-claim deed was recorded 29 April, 1959, and the "Engler" mortgage recorded 12 March, 1960. In spite of this deed, the Arringtons did not relinquish possession of the realty. They contend that the Davis quit-claim deed was given merely as a security for a debt.

On 19 July, 1960, Phoenix Title sent a "Notice of Election and Declaration of Forfeiture" to the Arringtons. They also sent a letter to the appellant which read in part as follows:

"The enclosed Notice of Election and Declaration of Forfeiture has been delivered to us for mailing to the buyers.

"A copy of this Notice is being forwarded to you by reason of any interest you may have in the premises due to mortgage assignment 3179/210.

Very truly yours,
/s/ _____
J. E. Haren
Escrow Officer
Service Section"

The number 3179/210 refers to the docket and page number of the recording of Engler's mortgage in the Maricopa County Recorder's Office. A copy of the notice sent to the Arringtons was enclosed with the letter. The notice provided that the Arringtons had 10 days in which to cure the default. It should be noted the appellant was not a party to the escrow and that there was no contractual relationship between appellant and Phoenix Title.

After receiving this letter, the appellant, through his son and attorney Lester Engler, telephoned Phoenix Title and Trust Company and was advised that payment had been made by the Arringtons within the time allowed and default cured.

On 29 December, 1960, Phoenix Title sent another notice to the Arringtons and a similar letter and copy of the notice to appellant. Appellant's attorney again contacted the Company and received the information that the payment had been made and the default cured.

On 18 May, 1961, Phoenix Title again sent a Notice of Default to the Arringtons and a similar letter, together with a copy of the notice, to the appellant. Appellant, through his attorney, again called Phoenix Title. The testimony indicates that he called 2 or 3 days before the end of the 10 day period and was informed that payment had been made by the Arringtons. He testified that he, on behalf of his client, was willing and able to tender the payment of some $1,845.42 to protect the investment.

The testimony of Lester Engler indicates that not until after the completion of the forfeiture on 6 June, 1961, was he informed that the check had not been honored by the

bank on which it was drawn. Lester Engler testified that during the ten day period Mrs. Arrington also told him she had made the payment.

■ The appellant contends that the appellee Phoenix Title and Trust Company, is liable to appellant because Phoenix Title breached its duty to appellant by imparting inaccurate information concerning the status of the Arringtons' payments. We need not consider this point as the facts are not such that we could conclude that Phoenix Title gave appellant false or misleading information. Although we must view the evidence in a light most favorable to the plaintiff-appellant, Drane v. Avery, 72 Ariz. 100, 231 P.2d 444 (1951), In Re Sullenger's Estate, 2 Ariz.App. 326, 408 P.2d 846 (1965), it does not appear the information given herein was false or inaccurate. The Company gave appellant three written notices which were correct even though there was admittedly no duty on the part of Phoenix Title to provide such information. The appellant called Phoenix Title on each of these three occasions and · was told that payment had been made. On the third occasion, presumably after giving appellant this information, the check was not honored by the bank and returned, and the forfeiture of the contract was completed. The only question before this Court then, is, what duty did Phoenix Title have to appellant to notify appellant that the check had been returned. We hold that Phoenix Title had no such duty under the present fact situation.

Appellant admits that there was no contractual relationship between the parties. Appellant, however, cites authority to the effect that:

"Where one undertakes an act which he has no duty to perform, and another reasonably relies upon that undertaking, the act must generally be performed with ordinary care." Northwest Airlines v. Glenn L. Martin Co., 6 Cir., 224 F.2d 120, 127, 128, 50 A.L.R.2d 882 (1955).

We do not find that in providing this information in response to appellant's telephone inquiry that Phoenix Title acted with less than the ordinary care appellant contends is applicable to the appellee in this case. Counsel has cited no authority and we have found none which indicates that the conduct of Phoenix Title in the instant case was negligent or that Phoenix Title owed a duty to notify plaintiff after the check was returned. The appellant also cites Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 448, 74 A.L.R. 1139 (1931) which states that liability for negligence will extend to auditors, lawyers, title companies, etc., "who certify their opinion" as to the accuracy of their information. We do not believe this case applicable as we do not find from the facts that Phoenix Title "certified" their opinion in the instant case, or that Phoenix Title was guilty of negligence.

■ However, there is another and possibly more persuasive reason why appellant may not prevail—there is no showing that appellant has been damaged by the failure of Phoenix Title to notify appellant when the check was returned. The allegations of appellant sounds in equitable estoppel and the three elements of estoppel are:

1. Action inconsistent with the claim afterward relied upon.

2. Action by adverse party on faith of such conduct.

3. Injury to the adverse party resulting from repudiation of such conduct.

Cashion Gin v. Kulikov, 1 Ariz.App. 90, 399 P.2d 711 (1965). Assuming, arguendo, that the first two requirements of estoppel apply and further that plaintiff stood ready and willing to make a payment of over $1,800.00 to save a $2,500.00 mortgage of doubtful effect, considering the prior quit-claim deed of the property to Davis, still the plaintiff would have to show that the check was returned to Phoenix Title within the 10 day period contained in the Notice of Default in sufficient time to allow appellant to make the payment before forfeiture. If the check was returned by the bank after the 10 day period given in the notice there was no showing by plaintiff of sufficient facts that

Phoenix Title would be in a position to accept a tender of payment from plaintiff. Had appellant tendered into the escrow the amount due prior to the running of the 10 day period contingent upon the payment by the Arringtons not being made or the check being returned, we might view the matter in a different light. But such is not the case here. We have only the assurances made after the default that appellant would have made the payment. These assurances and any possible tender made pursuant thereto come too late to have any legal effect upon the actions of Phoenix Title in this matter.

It is noted that there were no findings of fact and conclusions of law by the trial court [Rule 41(b), Rule 52(a), Rules of Civil Procedure, 16 A.R.S.], but this failure is not raised in any way on this appeal. In Re Sullenger's Estate, supra.

Judgment affirmed.

STEVENS, C. J., and DONOFRIO, concur.