433 P.2d 54

SECURITY INSURANCE COMPANY OF NEW HAVEN, a corporation, Appellant,

v.

David D. DAY dba David D. Day Construction, Appellee.

No. 1 CA–CIV 429.

Court of Appeals of Arizona.

Nov. 3, 1967.

Rehearing Denied Jan. 4, 1968.

Review Denied Feb. 20, 1968.

Lewis, Roca, Scoville, Beauchamp & Linton, by, John P. Frank, Gerald K. Smith and Charles D. Roush, Phoenix, for appellant.

J. William Moore, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal in an action to recover on a contractor's labor and material payment bond, resulting in a judgment of $7,747.17 for the plaintiff.

Briefly, the facts are that the International House of Pancakes, a corporation, hereafter referred to as International, contracted with the Municipal Construction Company (Municipal) as its general contractor to construct certain improvements for it for the sum of $46,530. Appellant Security Insurance Company of New Haven (Security), as surety, executed a payment bond in this amount on behalf of Municipal, as principal. The obligee was International and the bond guaranteed payments of amounts owed for labor and material used in the construction of the improvements.

Appellee Day, at the same time the contract was made between International and Municipal, personally subcontracted with Municipal to do certain work on the job. The nonpayment of this work forms the basis of the judgment. The contract was oral and to the effect that Day, in order to get the construction started, was to perform certain site work, carpentry, both rough and finish, and concrete work, as well as to do some supervision on the job. This contract was on a cost-plus basis. There is no specific finding by the trial court relative

to knowledge on the part of Security with respect to whether Day performed his functions as a separate businessman or as general managing employee for Municipal.

At the time, Day was Vice-President of Municipal and also was listed as r.m.e., responsible managing employee for Municipal's contractor's license. This is a requirement of corporate contractors such as Municipal which held a Class B general contractor's license. Day held a Class B–2 general contractor's license in his own name. He was paid no salary by Municipal, and devoted only some of his time to the supervision of the project. His work appears to have been limited to some site work, carpentry, both rough and finish, and some concrete work, as well as supervision of the work. He also paid for some of the materials used.

Surety contested the suit on the grounds that Day, as qualifying employee for Municipal, could not legally subcontract with Municipal, and also that he could not recover in any event since he was not properly licensed and therefore precluded from recovery under A.R.S. § 32–1153.

A basis of its contest was that under the statutes and the rules adopted by the Registrar of Contractors, Day, holding only a Class B general contractor's license, could not lawfully subcontract to perform the required work as it involved specialties for which he carried no licenses; that having done so, he was prohibited from using the courts to collect amounts claimed to be due him. The essential objection was that a general contractor may not enter into a subcontract with another general contractor who has the prime contract for work which requires the subcontractor to use fewer than three building trades or crafts unless he is licensed in those specialties.

The principal issue of this appeal revolves around the interpretation of A.R.S. § 32–1102, subsec. 1 which defines a general contractor as follows:

"A general building contractor is a contractor whose principal contracting business is in connection with any structure built, being built, or to be built for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind requiring in its construction the use of more than two unrelated building trades or crafts, or to do or superintend the whole or any part thereof, * * * "

and § 32–1102, subsec. 3 which defines a specialty contractor as follows:

"A specialty contractor is a contractor whose operations as such are the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts * * * "

and Rule XI promulgated by the Registrar pursuant to authority granted him by statute § 32–1105, subsec. A, which rule reads:

"General contractors (Class A, B, B–2 and B–3) may do all or any part of the work required to be done under any contract which they, under their licenses, are authorized to enter into; they may not, however, bid or do work as specialty contractors on buildings or other structures for the construction of which they do not have the contract unless they have prior thereto duly qualified with the Registrar for such work or such specialty contracting. A Class B–3 contractor cannot build by contract; he may build for himself for sale only. Sales must be made after buildings are completed."

At the outset, it is well to set out certain other pertinent statutes involved herein. Chapter 10, Title 32, Arizona Revised Statutes, provides for the licensing and regulation of contractors. A.R.S. § 32–1151 makes it unlawful for a person without a license to act as a contractor; § 32–1164 makes it a crime to do so; and § 32–1153 requires a contractor to allege and prove that he was licensed in order to recover compensation for the performance of his contract.

Surety's principal argument is that by § 32–1102, subsec. 1 a limitation is placed on Day as a general building contractor with respect to the work he can contract under his license; that by this limitation he

is prohibited from subcontracting with Municipal in this instance unless he is using more than two unrelated building trades or crafts in the work; that under the evidence he is using only two crafts as classified by the Registrar (C–7, carpentry, and C–9, cement and concrete) for which he has no special licenses and therefore is beyond the limits imposed by the statutes and rules.

Appellant argues that it was the intent of the Legislature to limit the field and scope of operations of general contractors to projects upon which they have the prime or general contract and upon which they perform more than two unrelated building trades. It further argues in support of its contention that otherwise there would be myriad general contractors working on a single construction job and that this would not insure compliance with the standards of performance of each of the specialized building trades or crafts involved in the job.

To hold with appellant would mean that the Legislature intended to grant or delegate to the Registrar the power to enact a rule whereby a construction job could have but one general contractor performing work. For it is by Rule XI that it seeks to tie in that Day as a general contractor is prohibited from subcontracting in that he lacks the specialty licenses which are required by this rule. To restate it, appellant interprets Rule XI to say that general contractors may not work on jobs for which they do not have the prime contract unless they have a specialty license for the work they are to perform.

We do not agree with appellant's interpretation of Rule XI; however, assuming for the moment such an interpretation, we would conclude that the Registrar by so enacting such a rule would have gone beyond the powers conferred upon him by the statutes, or in any way necessarily implied therefrom, to enact rules and regulations.

■ A reading of Chapter 10 does not reveal any intention on the part of the Legislature to recognize the principle advanced by appellant of one job, one general, or that it gives to the Registrar any such power to make a rule advancing this principle. The Registrar is given power by § 32–1104, subsec. 6 to make only such rules and regulations "he deems necessary to effectually carry out the provisions and intent" of the chapter. The purpose of the act is to regulate the conduct of those engaged in the business of contracting so as to discourage certain bad practices which might be indulged in to the detriment of the public.

" * * * As was determined in Hunt v. Douglas Lumber Co., 41 Ariz. 276, 17 P.2d 815, 819, the act was considered as a regulatory measure designed for the protection of the public against unscrupulous and unqualified persons purporting to have the capacity, knowledge and qualifications of a contractor." Northen v. Elledge, 72 Ariz. 166, 172, 232 P.2d 111, 115 (1951).

■ In arriving at the intention of a statute, the effect and consequence and the spirit and reason of the law are fundamental to the ascertainment thereof. Isley v. School District No. 2 of Maricopa County, 81 Ariz. 280, 305 P.2d 432 (1956).

■ § 32–1105, subsec. A permits classification of contractors in a manner consistent "with established usage and procedure as found in the construction business". We have not been shown, nor can we take judicial notice, that there is any usage or procedure that a construction job should have but one general contractor performing work thereon unless he holds a specialty license for the work involved. Certainly a reading of § 32–1102, subsec. 1 defining a general building contractor does not in any way limit a general contractor from carrying on the business of general contracting in connection with a job just because the prime contract of the job might

be with another general contractor. Nei-ther does a reading of all the other statutes reveal that any such custom was intended to cover the industry. We read the act as giving a general building contractor the power to contract the performance of all types of work relating to building as de-fined in that category irrespective of whether he has the prime contract.

To hold that the Registrar has such broad powers to formulate such a rule as attributed to him affecting the general con-tracting business would, in effect, be hold-ing that the Legislature had given him power to determine which contractors may contract with each other, thereby fixing such a policy for the general contracting business of which he alone was the sole author. In this respect we see no differ-ence in the instant matter than that passed on in State v. Marana Plantations, 75 Ariz. 111, 252 P.2d 87 (1953) wherein the Board of Health had given too broad a power to formulate general policies affecting the public health. Applying the reasoning of Marana, we would say that to give the Registrar such powers would permit him to wander with no guide or criterion, with no channel through which his powers may flow. He would be free to flood the field with such rules and regulations as his un-restrained discretion might dictate. He may, upon investigation, discover what he might think are evil conditions and proceed to adopt whatever remedial rules might suit his fancy. Were the Legislature to give him such powers it would well be an unconstitutional delegation of legislative power to an administrative agency. In Marana wherein our Supreme Court held that the granting of such power was an un-constitutional delegation of legislative pow-ers, it said:

> " * * * The formulation of policies is for the legislature and administrative rules must be within the framework of policies which the legislature has suf-ficiently defined. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79

L.Ed. 446. * * *" 75 Ariz. at 114, 252 P.2d at 89.

For a discussion of the general law, see also State v. Wacker, 86 Ariz. 247, 344 P.2d 1004 (1959), wherein, unlike the in-stant case, the statute designated a specific evil toward which it was directed, and di-rected and defined a course of conduct to be followed by the administrative agency, thus making valid the adopted rule.

In answer to appellant's argument that there would be myriad general contractors on a job when having only one would insure a better standard of performance, the fol-lowing comes to mind: Suppose a general contractor has a contract for an airport, including a particular hangar; suppose he wishes to do the whole airport himself through normal subcontractors in the usual fashion but wishes to subcontract the hang-ar as a unit to another general contractor with experience in hangar building, and who has no specialty licenses, but who in turn would subcontract the specialties. The question is whether this is an abuse in the industry which the Legislature intended to prohibit. We believe not. For it might well be argued in this age of diversification and specialization that a particular general contractor with experience in building hangars could render better workmanship in performing and supervising the con-struction of the hangar than could a myriad of specialty contractors working separately and individually under the supervision of the prime contractor who has no experi-ence in the building of hangers. The prin-ciple of "one general" as being more con-ducive to better compliance with standards is open to argument. In some instances the efficiency of a prime contractor to super-vise a large job could well rise to a certain point and when this point is reached be-cause of such things as the job being too large, or outside his realm of experience, pass beyond the point of efficiency. Al-though there is some merit to the argument, we cannot see any inherent reason that the "one general" principle is more con-ducive to a better compliance with the

standards of crafts and trades. Therefore, we feel this is a matter for legislation and not one to be reposed with the Registrar.

 We believe a more plausible interpretation of Rule XI to be the one urged by appellee. Rule XI is divided into two parts or phrases by a semicolon. The first portion provides:

> "General contractors (Class A, B, B–2 and B–3) may do *all* or *any part* of the work required to be done under any contract which they, under their licenses, are authorized to enter into; * * *" (emphasis added)

Applying this portion of the rule to the contract in question, and keeping in mind the definition of a contractor, it is clear that nothing in this portion prohibits Day from entering into the contract with Municipal. The second portion of the rule provides:

> "* * * they may not, however, bid or do work as *specialty contractors* on buildings or other structures for the construction of which they do not have the contract unless they have prior thereto duly qualified with the Registrar for such work or such *specialty contracting*." (emphasis added)

We read the latter part of the rule to apply to only specialty contractors as defined in § 32–1102, subsec. 3. Day was not a specialty contractor, therefore this latter portion would not apply in his case, but as a general contractor, the first portion which indicates that a general contractor may do "all or any part" of the required work to be done under the contract, is applicable to him.

 We might add that we hold the evidence supports that Day performed more than two unrelated building crafts and supervision of the construction to come within the definition of a general contractor. We are not called upon to determine whether a general contractor is eligible to bid a job which involves the services of a single craft if such bid does not constitute his "principal" contracting business. We are unable to agree with appellant that Day, the responsible managing employee (r.m.e.) for Municipal, could not, in his capacity as an individual, legally subcontract a job with Municipal to do work which he is qualified to do as a general contractor to the extent that his rights to recover in an action are forfeited. A reading of the rules and regulations reveals that they do not prohibit a responsible managing employee from holding a license in his own name; in fact Rule XXV presupposes he may hold licenses, as it reads:

> "When a licensee, responsible managing employee, qualifying partner or qualifying officer under this act is found guilty of an act or omission for which his license is revoked, such revocation shall include the revocation of all other licenses held by said responsible managing employee, qualifying partner or qualifying officer, and shall further include in the sole discretion of the Registrar the suspension or the revocation of any license held by a partnership or corporation that lists such revoked license as qualifying partner, managing employee or qualifying officer. (As amended April 1964)."

We are unable to find anything in Rule XXVI that would prevent Municipal from entering into the contract with Day. We do not pass on the question of whether Day has violated any of the rules which might subject him to revocation or suspension. Any violation of Rule XVI would not forfeit Day's right to recover under the contract, but would only subject him to answer for the violation of said rule as provided by law.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.