433 P.2d 807

**HERMAN CHANEN CONSTRUCTION COM-
PANY, Inc., and General Insurance Co. of
America, Inc., Washington, a corporation,
Appellants,**

**v.**

**NORTHWEST TILE AND TERRAZZO
COMPANY OF MONTANA, In-
corporated, Appellee.**

**I CA–CIV 432.**

Court of Appeals of Arizona.

Nov. 16, 1967.

Snell & Wilmer, by Larry L. Vickrey and Roger W. Perry, Phoenix, for appellants.

Marks & Marks, by Philip J. Shea and Royal D. Marks, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal from a summary judgment in favor of Appellee Northwest Tile and Terrazzo Company of Montana, Incorporated (Northwest), plaintiff below, and against Herman Chanen Construction Company, Inc. (Chanen) and its surety, General Insurance Co. of America, defendants below and appellants.

The pertinent facts can be stated briefly as follows: Appellant Chanen was the general contractor in charge of the construction of the terminal building at the Sky Harbor Municipal Airport in Phoenix. It subcontracted the tile and mosaic work to appellee Northwest. Shortly after Northwest had accepted the subcontract from Chanen it had occasion to write the Registrar of Contractors to ascertain whether or not the C–33 (mosaic and terrazzo) license which it held was proper to cover the work involved. The Registrar replied by letter that since a portion of the work concerned laying ceramic tile, which is covered by a C–48 (ceramic, etc.) license, Northwest was not properly licensed; further, that since it had bid on a contract for a job for which it was not licensed, in violation of A.R.S. § 32–1154, subsec. 18, it could not be granted the appropriate license for a period of one year. The Registrar of Contractors also informed Northwest that Northwest's ceramic tile license for California would not authorize it to do such work in Arizona as there was no reciprocity between California and Arizona on the licensing of contractors. Both the Registrar and Northwest's own attorney recommended that the portion of the work not covered by the C–33 license should be subcontracted to a properly licensed contractor. Perry

Tile and Marble Company of Phoenix was recommended by Chanen as the subcontractor to do the work. Despite the recommendation, Northwest wanted to assign the ceramic portion of its contract to Perry outright rather than subcontract it. Chanen insisted, however, after consulting legal counsel, that it should be subcontracted rather than assigned. This was done, and Perry was subcontracted to fill the ceramic portion of the work. Northwest has now paid Perry for this work.

The date for completion of Northwest's portion of the project was originally set for July 14, 1961, but later it was advanced to August 14, 1961. Northwest, however, was unable to commence until August 22 and we assume this was through no fault of its own because the parties pushed the deadline to November 22, 1961. The work was not completed until February 2, 1962, seventy-two days later. The contract provided that Northwest would be liable to Chanen on the basis of $250.00 per day for each day of delay beyond the scheduled time of completion. No question was raised that if Northwest was found to be responsible for the delay the amount of liquidated damages would be on the basis of $250.00 per day, and that for the seventy-two days' delay it would total $18,000. Northwest contends that the delay was caused by Chanen's poor organization and other subcontractors' interference.

Northwest began this action for the over $22,000 due and owing under the contract. When Chanen asserted a defense of delay and $18,000 liquidated damages as a setoff, Northwest then amended the action to pray for over $42,000 damages which it alleged was suffered by reason of the delay which it asserted was due to Chanen's actions. Aside from the issue of damages for delay, the only monetary question was a small matter of about $400.00 arising over change orders.

The first question we shall consider is the defense to the action that Northwest had contracted to do a job not covered by its

license and therefore under A.R.S. § 32–1153 is precluded from recovery.

In line with Supreme Court cases, we have held that by § 32–1153 the Legislature has denied a party entering into a contract the right to sue on that contract if he does not hold the proper license to perform the contracted task. Security Insurance Company of New Haven, a corporation v. Day, 6 Ariz.App. 403, 433 P.2d 54 (1967). In the instant case it is to be noted, however that we do not have a contractor performing work exceeding his license authority, but rather a contractor who sought to perform a task for which it appeared to be licensed. However, when it found that it was not properly licensed it sought advice, and at the suggestion of the Registrar of Contractors and upon the insistence of Chanen, subcontracted rather than assigned the task to a qualified licensed party. A reason given by the defense for not wanting an assignment was that it was desirable to keep the work subject to Northwest's bond.

■ Defense now seeks to deny liability on the contract and payment for the work done by Perry because plaintiff, as original contractor, did not have the proper license and had to subcontract the work to this properly licensed party. Under these circumstances we cannot agree that the Legislature intended this result. The true intent of the legislation contained in Arizona Revised Statutes, Title 32, Chapter 10, was to protect the welfare of the public dealing with persons engaged in the building contracting vocation and to afford such public a protection against incompetent, inexperienced, unlawful and fraudulent acts of the building contractors with whom they contract. We have held its purpose is to regulate the conduct of those engaged in the business of contracting so as to discourage certain bad practices which might be indulged in to the detriment of the public. Security Insurance Co. of New Haven v. Day, supra. In the present case the defendant Chanen not only got skilled craftsmanship, but it was performed by a duly licensed contractor. To say that Northwest is prevented from bringing this lawsuit because it had, on the insistence of defense, subcontracted the ceramic work when instead it wanted to assign, would be a travesty on justice. We believe this is a proper place to invoke the doctrine of estoppel against defendant Chanen.

■ Briefly, the elements of estoppel are: first, an action which is inconsistent with a later claim; second, action by an adverse party relying on such conduct; and third, injury to the adverse party resulting from repudiation of such conduct. Engler v. Sainer, 4 Ariz.App. 86, 417 P.2d 720 (1966). We find all the elements present in this case. Chanen insisted on Northwest subcontracting the ceramic tile rather than assigning it. Relying on the insistence of defense, the work was subcontracted to Perry. All this was done when both parties were fully informed as to Northwest's license limitation. Now Chanen wishes to use its insistence to the injury of Northwest. In Bartholomew v. Superior Court, 4 Ariz. App. 50, 417 P.2d 563 (1966), the Court, speaking of estoppel, said:

> " 'The remedy of estoppel * * * is based on the grounds of public policy and good faith, and is interposed to prevent injury, fraud, injustice, and inequitable consequences by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The vital principle of equitable estoppel is that a person who by his language or conduct leads another to do what he would not otherwise have done may not subject such person to loss or injury by disappointing the expectations on which he acted.' 31 C.J.S. Estoppel § 63, pp. 392–394."

We therefore hold that Chanen is estopped from denying the right of Northwest to bring this action. We do not pass upon any questions involving licensee's answering to the State for any infractions it may have

committed against any rules or statutes governing the matter.

■ We next consider the question of whether the trial court erred in granting the summary judgment. If the pleadings, depositions and admissions on file, together with the affidavits which were considered by the Court showed that there was a genuine issue as to any material facts involved in the issues formed by the pleadings, then the Court erred in granting summary judgment. Lawless v. Ennis, 3 Ariz. App. 451, 415 P.2d 465 (1966). In reviewing a ruling granting the motion for summary judgment, the Court on appeal will construe the record in the light most favorable to the party opposing the motion. Madsen v. Fisk, 5 Ariz.App. 65, 423 P.2d 141 (1967); Weber v. Bates, 3 Ariz.App. 420, 415 P.2d 135 (1966).

Appellant urges the lower court erred in granting the motion in that there were genuine issues of fact in dispute, particularly the amount due on the contract by reason of the issue joined on the question of delay and damages due as a result thereof. The issues on this point are set out rather clearly in the pleadings. In paragraph III of plaintiff's complaint it is alleged:

"Plaintiff has fully complied with all terms of said contract with the defendant HERMAN CHANEN CONSTRUCTION COMPANY, INC., except as to the date of completion specified therein. Plaintiff, however, was prevented from finishing said work within the specified time by the fact that defendant, HERMAN CHANEN CONSTRUCTION COMPANY, INC., did not have the area ready for plaintiff to go to work until after the originally specified completion date. Plaintiff did go to work as soon as feasible after the work site was prepared by defendant HERMAN CHANEN CONSTRUCTION COMPANY, INC., all with the knowledge and consent of said defendant, and did complete within a reasonable time thereafter all work called for by the original contract with the agreed modifications specified above in paragraph II."

The fourth paragraph of item 14 of the contract attached to the complaint provides as follows:

"It is expressly understood, that should Sub-Contractor fail to complete the work covered hereby within the time limit herein provided for, or within said term as it may be extended by reason of delays, changes, additions, caused or allowed by the Contractor, Architect or other Sub-Contractors, then Sub-Contractor agrees to pay and will pay to the Contractor for each day of delay beyond the scheduled time of completion, the sum of $250.00 per day which sum, in view of the difficulty of estimating Contractor's damage has been and is hereby determined to be liquidated damages and not a penalty, and said sum shall be deducted as such from the balance due Sub-Contractor. Should such damages exceed the sum due or to become due to Sub-Contractor, then in that event Sub-Contractor shall be liable to Contractor for such difference."

Northwest has alleged the existence of a contract, admitted it failed to complete the project in accordance with the contract, and attached the contract to its pleadings, which contract showed that Chanen had a right to deduct $250.00 a day for delay. Chanen, in answer to the complaint, admitted that Northwest did not complete on time and denied that Northwest had a valid reason for not completing on time.

The thrust of Northwest's argument is that its sworn motion for summary judgment alleges the admission by Chanen of the sum of $22,648.95 due and that Chanen's claim of $250.00 a day penalty for delay is without merit as the delay was caused by Chanen itself, and that this stands undenied under oath. Chanen, on the other hand, asserts that the affidavits and depositions of record reflect that the issue of delay was gone into with varying and conflicting answers and that plaintiff's pretrial memorandum also directed itself to this question of delay. At oral argument coun-

sel pointed out specifically that there is of record under oath an issue formed by Chanen on the question of delay. This is in the form of a letter attached to the affidavit in opposition to motion for summary judgment of N. J. Hennen, comptroller for Northwest, wherein Chanen sets forth the offsets it claims and the item of $18,000 (change order 5476) is contained therein. The record supports this.

 It would appear that Chanen never relented in his assertion that $18,000 should be deducted from the amount payable to Northwest. On the other hand, it appears Northwest dropped its demands for over $42,000 in damages only for the purpose of taking summary judgment. The evidence offered by the witnesses on deposition and affidavit is conflicting as to who caused the delay. We find the Court erred in entering summary judgment.

Reversed and remanded for proceedings not inconsistent with this opinion.

CAMERON, C. J., and STEVENS, J., concur.