**In re SPANISH TRAILS LANES, INC., Debtor.**

**Bankruptcy No. B-80-0150-PHX-RGM.**

United States Bankruptcy Court, D. Arizona.

Dec. 30, 1981.

Howard C. Meyers, Phoenix, Ariz., for debtor.

James M. Marlar, Phoenix, Ariz., for Arizona Parking Lot Services.

## OPINION AND ORDER

ROBERT G. MOOREMAN, Bankruptcy Judge.

The debtor in the instant proceeding filed a petition under the provisions of Chapter 11 of the Bankruptcy Code on January 29, 1980. This matter comes before the court upon the hearing of an objection by the debtor-in-possession to a claim for $9,000 filed by Al Fielder dba Arizona Parking Lot Services.

The facts disclose that on August 29, 1978, Mr. Hall, the chief officer of the debtor Spanish Trails Lanes, Inc., entered into an agreement in which Arizona Parking Lot Services agreed to do the paving and curb-ing of a parking lot on the debtor's real property on which a bowling alley and entertainment complex were located. At the time of the agreement, the claimant did not have a valid contractor's license in the State of Arizona. The debtor, however, became aware of this fact about half way through the job, and agreed to the claimant completing portions of the remaining work. The claimant completed approximately 90% of the job before terminating his performance and calculated that as a result of the actual work performed, he is still owed a balance of $9,000. At the hearing and upon the facts presented, the claim in question was liquidated and proven in the amount of $9,000. However, the validity of the claim is subject to a further determination by the court based on the debtor's argument that the claim should be disallowed under Arizona law for the failure of the claimant to hold a valid contractor's license.

The debtor-in-possession seeks to disallow payment of the claim on the ground that under Arizona law the claimant would not be allowed to *enforce* his claim in state court. The relevant Arizona statutes read:

*A.R.S. § 32–1151*

It is unlawful for a person, firm, partnership, corporation, association or other organization, or a combination of any of them, to engage in the business, act or offer to act in the capacity, or purport to have the capacity of contractor without having his own license in his own name therefor as provided in this chapter, unless the person, firm, partnership, corporation, association or other organization is exempt as provided in this chapter. Evidence of securing a permit from a governmental agency or the employment of a person on a construction project shall be accepted in any court as prima facie evidence of existence of a contract.

*A.R.S. § 32–1153*

No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this

chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

The question which must be decided by this court is what effect does Arizona law have on this court's final determination of the validity and enforceability of the $9,000 claim now liquidated in the bankruptcy court.

In answering this question, it is necessary to clarify several points of law which deal with the status of the claim in question, the wording of the applicable statutes and the interplay between the bankruptcy court, state courts and state law.

The historic decision of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1934) held that:

> Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. *Erie v. Tompkins*, at page 78, 58 S.Ct. at page 822. (Emphasis added.)

■ While most federal courts are required to apply the law of the state in which they sit, the bankruptcy courts fall squarely within the above exception to the general rule that state law controls. Their jurisdiction is not grounded on diversity of citizenship, but by an "Act of Congress" found in 28 U.S.C. § 1471, which in subsection (e) states:

> The bankruptcy court in which a case under Title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

The distinction between bankruptcy and diversity courts was noted by Judge Friendly, who stated:

> Of course, Congress is not required to direct the federal courts to look to state law for the definition of state-created rights asserted in bankruptcy, as it is when federal jurisdiction rests solely on diversity of citizenship. The question is

of intent, not of power. *Fore Improvement Corp. v. Selig*, 278 F.2d 143, 147 (2nd Cir. 1960).

■ While we feel that *Erie, supra* does not require the bankruptcy court to look to state law in all instances, this does not however mean that state law is not a necessary ingredient in determining the existence of claims. The bankruptcy court in determining which claims are allowable should look to state law in determing the origin and existence of a claim; however, after this initial determination is made, state law is no longer controlling and the court is free to use its equitable powers in allowing or disallowing a claim. This distinction between the initial inquiry into the existence of a claim, and the subsequent allowance of a claim is discussed in the following quote from a Law Review article, "The Use of State Law in Bankruptcy Cases." 47 *New York University Law Review*, p. 407 (1972) where Professor Vern Countryman stated:

> But the bankruptcy process deals with an existing condition. Only claims in existence at the time the bankruptcy petition was filed are provable. And the Bankruptcy Act does not provide a body of law, to be applied retroactively, in the establishment of claims. Hence, the existence and amount of the bankrupt's liabilities, though determined by the bankruptcy court in allowing or disallowing claims, will inevitably be determined by non-bankruptcy, usually state, law.

In analyzing the validity of the instant claim before the bankruptcy court, we are guided by the following observation made by the United States Supreme Court in *Heiser v. Woodruff*, at 327 U.S. 726, 732, 66 S.Ct. 853, 856, 90 L.Ed. 970, 975 (1946) wherein it is stated:

> In passing upon and rejecting or allowing the proof of claim in this case the court of bankruptcy proceeds—not without appropriate regard for rights acquired under state law—under federal statutes which govern the proof and allowance of claims based on judgments. *In determining what judgments are provable and what*

*objections may be made to their proof, and in determining the extent to which the inequitable conduct of a claimant in acquiring or asserting his claim in bankruptcy, requires its rejection or its subordination to other claims which, in other respects are of the same class, the bankruptcy court is defining and applying federal, not state, law.* (Emphasis added.)

To effectuate the purposes of the Bankruptcy Code in successfully rehabilitating distressed debtors while at the same time treating creditors in a fair and equitable manner, bankruptcy courts must broaden their vision to include not only applicable state law, but the circumstances surrounding the claims in question. For this purpose, bankruptcy courts have been endowed with "the power to sift the circumstances surrounding any claim to see that injustice and unfairness is not done in the administration of the bankrupt estate." *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281, 286 (1939). Substantial right and justice rather than technical form control. *Jones v. Kendall,* 34 F.2d 344, 347 (4th Cir. 1929).

Therefore, in the instant case, we feel it is important to avoid summarily accepting or rejecting the claim in question without closely analyzing the nature, purpose and effect of the mentioned Arizona statutes, in conjunction with the facts surrounding the claim as presented to the bankruptcy court.

A situation, analogous to that presented in the instant case, was posed in the case of *In re Leeds Homes,* 222 F.Supp. 20 (D.Tenn. 1963). There, in a reorganization proceeding under the former Bankruptcy Act, a nonqualified foreign corporation filed a claim against the bankruptcy estate. The trustee disputed the claim on the ground that the claimant had failed to qualify to do business as a foreign corporation under the foreign corporation laws of Tennessee thus

rendering the claim invalid in that state. The Tennessee court relied on the Supreme Court case of *David Lupton's Sons Co. v. Automobile Club,* 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912) which held that the mere fact that a nonqualifying foreign corporation could not sue in state court, where its contracts were not void but only unenforceable, did not deny the corporation the right to sue in federal court. Since the later case of *Erie, supra* did not affect non-diversity courts such as the bankruptcy court, this rule was held to still apply. The court in *Leeds, supra* noted several Tennessee cases which held that such action by a corporation was unlawful but found that these cases could not be interpreted to construe such contracts by nonqualifying corporations as wholly void but rather that they were unenforceable in the State of Tennessee.

With this rationale in mind, we construe the Arizona statutes involved herein so as to reach the conclusion that contracts entered into by non-licensed contractors are unenforceable or voidable in Arizona state courts as a matter of law, but are not *void ab initio.* The language of A.R.S. § 32–1151 states that it is "unlawful" for a person to engage in the business of a contractor without a license, but no remedy or penalty is provided except for that imposed by A.R.S. § 32–1153 which merely denies contractors judicial relief in Arizona courts. If A.R.S. § 32–1151 were to be read so as to make these contracts *void ab initio,* there would be no apparent need for A.R.S. § 32–1153. In addition, the Arizona case law states that the purpose of the law is to protect the public against unscrupulous contractors. *Kayetan v. License No. 37589, Class C–61,* 116 Ariz. 99, 567 P.2d 1228. It is this court's opinion that these statutes were not designed to nullify valid claims.[1]

---

1. It should be noted that the Arizona legislature has recently revised A.R.S. § 32, and has done away with the regulation and licensing of commercial contractors, thus regulating only contractors engaged in residential construction. The legislative purpose for this change was stated as follows:

"The legislature finds that regulation of the commercial and industrial construction business, including public works, by the registrar of contractors agency is not necessary for the protection of the public health, safety and welfare, and that it is in the public interest to deregulate such business. It is the purpose

Nowhere in the statutes or cases interpreting these laws is there mention of a direct prohibition against members of the general public contracting with unlicensed contractors. Clearly a property owner dealing with an unlicensed contractor would not also be denied access to state court in enforcing a contract because it was made with an unlicensed contractor. As *Blacks Law Dictionary* states in defining a void contract, such a contract:

> ... creates no legal rights and either party thereto may ignore it at his pleasure in so far as it is executory.

Had the contract been void or illegal, the prohibitions enunciated in these statutes would have applied to both contracting parties, and not just to the unlicensed contractor. For these reasons, this court holds that the contract at issue in the instant matter, although unenforceable by the claimant in Arizona state courts is not *void ab initio* in nature. Having made these determinations, the court concludes that the claim in issue can be properly asserted in bankruptcy court. In exercising its equitable powers in determining whether or not to allow the instant claim, it is further noted that the debtor has been enriched by the work of the claimant, and that he acquiesed in the continued performance of the claimant after being put on notice that he was unlicensed.

IT IS ORDERED the claim of $9,000 of Arizona Parking Lot Services be allowed as an unsecured claim eligible to receive an appropriate share under a debtor's plan of reorganization.

Pursuant to FRCP 52, as adopted by Rule 752 of the Rules of Bankruptcy Procedure, this opinion and order shall constitute findings of fact and conclusions of law herein.

and intent of the legislature to continue the registrar of contractors agency in order to protect the public health, safety and welfare by providing for the continued licensing,

bonding and regulation of contractors engaged in residential construction." Laws, 1981, Ch. 221 § 1.