**TOPRO SERVICES, INC., a Colorado corporation, Plaintiff,**

v.

**McCARTHY WESTERN CONSTRUCTORS, INC., a foreign corporation and Federal Insurance Company, a foreign corporation, Defendants.**

Civ. A. No. 93–K–1095.

United States District Court, D. Colorado.

June 29, 1994.

Thomas C. Clark, Wheat Ridge, CO, for plaintiff.

Arlene Dykstra, Pryor, Carney & Johnson, Englewood, CO, Michael L. Rhees, Phoenix, AZ, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on the motion for summary judgment of Defendants McCarthy Western Constructors, Inc. ("McCarthy"), and the Federal Insurance Company ("Federal"). Plaintiff Topro Services, Inc. ("Topro") claims $281,031 in damages allegedly owed to it by McCarthy or its surety, Federal, for breach of contract and unjust enrichment. The claims arise out of a subcontract entered into by Topro and McCarthy in which Topro agreed to supply instrumentation and control equipment for a wastewater treatment plant McCarthy was building for the City of Phoenix, Ariz. I deny Defendants' motion.

### I. *Facts.*

Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. The Plaintiff is a citizen and resident of Colorado. Defendants are neither citizens nor residents of Colora-

do. This case was removed from the District Court, Second Judicial District, City and County of Denver, State of Colorado.

McCarthy, a general contractor, undertook the construction of the 23rd Avenue Wastewater Treatment Plant Upgrade and Expansion Contract I pursuant to its prime contract with the City of Phoenix in February 1991. In October 1991, McCarthy subcontracted with Topro to supply various instrumentation and control equipment. The ultimate issue in dispute is whether Topro was obligated to supply an electrical control panel and related equipment (the "odor control panel") as part of its contract with McCarthy. Within the context of Defendants' motion for summary judgment, the merits of the contract claim are not at issue. Topro did supply the "odor control panel" under protest, claiming it was not obligated to do so under its contract.

On summary judgment, McCarthy claims that Topro cannot maintain an action for compensation because it was not licensed to perform the work—as is required by Arizona law.[1] (Defs.' Br.Supp.Mot.Summ.J. ("Defendants Motion") at 3). Topro contends that the statutory prohibition against suit by unlicensed contractors only extends to Arizona *state* courts, or alternatively, that it falls within one of the exemptions to the statute. (Pl.'s Resp.Defs.' Mot.Summ.J. ("Topro Response") at 2–4). Topro in fact did not have the required license either at the time it contracted with McCarthy or when it supplied the "odor control panel." Topro argues that it should be allowed to maintain its suit because although Topro itself did not have a license, the work at issue was performed by licensed subcontractors.

### II. *Standards for Motion.*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S.

---

1. The parties have stipulated that Arizona law controls this action, based on Article 10.1 of their agreement. Pretrial Order at 5.

317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

### III. *Merits.*

■ McCarthy contends Ariz.Rev.Stat. Ann. §§ 32–1151 & 32–1153 control this case and prevent Topro from asserting a cause of action since it did not have a license at the time it entered into the contract. Section 32–1151 makes it unlawful for a contractor to contract within the state without a license:

> It is unlawful for a person, firm, partnership, corporation, association or other organization, or a combination of any of them, to engage in the business, act or offer to act in the capacity, or purport to have the capacity of contractor without having his own license in good standing in his own name therefor as provided in this chapter, unless the person, firm, partnership, corporation, association, or other organization is exempt as provided in this chapter.

.   .   .   .   .

Ariz.Rev.Stat.Ann. § 32–1151 (1986). Furthermore, contractors must offer proof they have licenses before they can file civil actions:

> No contractor as defined in § 32–1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

Ariz.Rev.Stat.Ann. § 32–1153 (1986). Through these sections, the Arizona legislature sought to protect the public from incompetent, inexperienced and fraudulent building contractors. *See Desert Springs Mobile Home Ranches, Inc. v. John H. Wood Constr. Co.*, 15 Ariz.App. 193, 196, 487 P.2d 414, 417 (1971). These strict licensing requirements should be upheld "[e]ven where harsh consequences fall upon those that do contracting work in good faith without an appropriate license." *B & P Concrete, Inc. v. Turnbow*, 114 Ariz. 408, 410, 561 P.2d 329, 331 (App.1977).

#### A. *Applicability of the Statutory Provision.*

■ As its first response to McCarthy's contention that it is precluded from bringing suit, Topro claims that § 1153 only applies to attempts to file in Arizona state court and thus does not affect this federal diversity action in Colorado. Also, since the statute is penal in nature and would result in a forfeiture, Topro urges that its interpretation be limited to its literal terms. In support of Topro's argument that federal courts can hear its claim despite the wording of the statute, it relies solely upon *In re: Spanish Trails Lanes, Inc.*, 16 B.R. 304, 308 (Bankr. D.Ariz.1981).

In that bankruptcy proceeding, the debtor-in-possession objected to a claim made by a contractor who had done paving and curbing work on the debtor's property. *Id.* at 305. The debtor-in-possession invoked §§ 32–1151 & 1153, since the contractor had not had a license at the time the work was performed. *Id.* Despite the words "any court of this state" contained § 1153, the court allowed the contractor to pursue its claim. However, Topro is incorrect in its assertion that the decision turned on the mere fact that the suit was brought in federal rather than state court. In fact, the *Spanish Trails* court said it was the special nature and jurisdiction of the federal *bankruptcy* courts that preserved the plaintiff's cause of action. The rationale hinges at least in part on *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the distinction between federal bankruptcy and diversity courts:

While most federal courts are required to apply the law of the state in which they sit, the bankruptcy courts fall squarely within the above exception to the general rule that state law controls. Their jurisdiction is not grounded on diversity of citizenship, but by an "Act of Congress" found in 28 U.S.C. § 1471 ...

. . . . .

The distinction between bankruptcy and diversity courts was noted by Judge Friendly, who stated:

> Of course, Congress is not required to direct the federal courts to look to state law for the definition of state-created rights asserted in bankruptcy, *as it is when federal jurisdiction rests solely on diversity of citizenship.* The question is of intent, not of power. *Fore Improvement Corp. v. Selig,* 278 F.2d 143, 147 (2nd Cir.1960).

16 B.R. at 306. (emphasis added). The *Spanish Trails* court therefore inferred that the statute *would* apply in a federal district court sitting in diversity.

*Urbatec v. Yuma County,* 614 F.2d 1216, 1219 (9th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 49 (1980), also held that the Arizona licensing statute should be applied in federal court. Plaintiff contractor Urbatec had sued Yuma County in a diversity action for breach of a construction contract. *Id.* at 1216–17. Despite the fact that the district court ruled that the parties had entered into a contract, Yuma County had breached, and Urbatec had suffered damages of $256,766, the Ninth Circuit reversed because Urbatec lacked an Arizona contractor's license. *Id.* at 1219. The court held that Urbatec was unable to sue for actions grounded in contract or promissory estoppel. *Id.* at 1218.

*Urbatec* and *Spanish Trails* indicate that a federal court sitting in diversity and applying Arizona law cannot allow an action for compensation by a contractor who was unlicensed. Although this may very well lead to an inequitable and harsh result, the statute was designed to protect the public and "[m]ust not be defeated in order to accommodate one who has violated the provisions of

the statute." *Northen v. Elledge,* 72 Ariz. 166, 171, 232 P.2d 111, 116 (Ariz.1951). If the statute applies against Topro, it will have no cause of action against the Defendants— so the remaining question is whether the plaintiff is somehow exempt from the licensing requirements of §§ 1151 & 1153.

## B. Void v. Voidable Contracts.

■ Topro and the Defendants also dispute whether a contract entered into by an unlicensed contractor is voidable or void *ab initio.* The *Urbatec* court based its decision on the theory that § 1151 renders such contracts violative of Arizona law and void, and that § 1153 is the codification of this principle. In addition to *Urbatec,* Defendants also cite *Northen v. Elledge* as the seminal Arizona Supreme Court case controlling this question. In *Northen,* the court quoted a number of authorities for the proposition that a contract founded upon an act for which a penalty is imposed is void *ab initio.* 72 Ariz. at 169–171, 232 P.2d at 114–16. This statement by the Arizona Supreme Court contradicts the district court holding in *Spanish Trails,* which supports Topro's contention that such contracts are merely voidable. *See Spanish Trails,* 16 B.R. at 307. However, Defendants also marshall persuasive federal authority in the form of *Urbatec,* which followed the lead of the *Northen* court:

> Similarly, this court cannot approve a judgment in favor of Urbatec whether based upon contract or promissory estoppel. Urbatec's failure to obtain an Arizona contractor's license before submitting its proposal renders any agreement or promise void and no suit may be sustained thereon.

614 F.2d at 1219. There is also persuasive dictum in *Mountain States Bolt, Nut & Screw Co. v. Best–Way Transportation,* 116 Ariz. 123, 125, 568 P.2d 430, 432 (App.1977), which states that a failure to obtain a license renders contracts void and against public policy. *See Yank v. Juhrend,* 151 Ariz. 587, 590, 729 P.2d 941, 944 (App.1986); *Caliendo v. Cohen (In re Southwest Distributing Co.),* 246 F.Supp. 568, 569 (D.Ariz.1965) ("*[N]orthen v. Elledge* is distinguishable for the reason that the statute therein expressly invalidat-

ed contracts rendered illegal by the statute."). The weight of Arizona case law supports Defendants' assertion that such contracts are void *ab initio*.

### C. *Effect of Topro's Subcontracting Out the Installation Work.*

In its contract with McCarthy, Topro agreed to install the equipment it was supplying. (Topro Response at 4–5). However, Topro claims that it should be exempted from the § 1153 licensing requirement because in reality the installation of the "odor control panel" *was* performed by licensed contractors. (Topro Response at 7). This assertion results in three overlapping arguments. First, Topro asserts that under *Herman Chanen Construction Co. v. Northwest Tile and Terrazzo Co. of Montana*, 6 Ariz. App. 490, 492, 433 P.2d 807, 809 (1967), the fact that a licensed contractor performed the work satisfies the licensing statute, the wording of which should be construed strictly to avoid forfeitures. Second, Topro claims that McCarthy knew or should have known that Topro was not a licensed contractor, yet McCarthy failed to object.[2] Lastly, Topro invokes an exemption from the licensing statute under § 32–1121(A)(4), saying it is a manufacturer who performed no actual installation of the equipment at issue.

### 1. *Licensed Subcontractors and the Goals of the Statute.*

■ The first question presented is whether § 1153 was satisfied because the work was performed by a properly licensed contractor, even though Topro itself lacked a license. Such an argument, separate from estoppel grounds or the § 1121(A)(4) exemption, is only hinted at by Topro but is explicitly attacked at length by Defendants.

In *Herman Chanen*, the court recognized that the purpose of the licensing requirement is to protect the public from unscrupulous contractors. "In the present case, the defen-

dant Chanen not only got skilled craftsmanship, but it was performed by a duly licensed contractor." 6 Ariz.App. at 492, 433 P.2d at 809. The court appeared to infer that the intent of the legislature could be fulfilled by something less than strict compliance with the statute. Similarly, in *Desert Springs*, the court refused to bar a suit in a situation where a corporation did not have a valid contractor's license but its president did. 15 Ariz.App. at 196, 487 P.2d at 417. The court reached this decision to avoid a "manifestly unjust and inequitable result" and said it preserved the true intent of the legislature and satisfied the goals of the statute. *Id.*

However, in *B & P Concrete*, the court recognized that the holding of *Desert Springs* was rendered suspect by later amendments to the statute. The 1973 amendment to § 1153 added language that provided that a contractor could not maintain an action without alleging and proving that "[t]he contracting party whose contract gives rise to the claim ..." was licensed. Ariz.Rev.Stat.Ann. § 32–1153 (1986). Similar changes were also made that year to § 1151, which no longer merely said it was unlawful for a contractor to work without a license. The new language said a contractor could not do business "[w]ithout having his *own* license in good standing in his *own* name therefor as provided in this chapter ..." Ariz.Rev.Stat.Ann. § 32–1151 (1986) (emphasis added).[3]

Topro obviously did not satisfy these more specific requirements. The fact that *someone* who was licensed did the actual work may have been enough to satisfy the statute under the *Desert Springs* interpretation of the statute and before the 1973 amendments. However, *B & P Concrete* makes it clear that there are now no loopholes to compliance with the licensing scheme—despite the harsh nature of the statue and the possibility for inequitable results. Indeed, the Arizona Legislature *intended* to bar some "just"

---

2. Although the word "estoppel" is not used in Part C of Topro's response brief, its argument appears to be based on that theory: "[M]cCarthy's actions and conduct during the performance period are powerful evidence that McCarthy considered Topro to be a manufacturer/supplier exempt from licensure, not an installation

contractor actually installing the equipment." (Topro Response at 8).

3. The phrase "in good standing" was added later by a 1983 amendment to the statute. Ariz.Rev. Stat.Ann. § 32–1151 (1986).

claims. *B & P Concrete*, 114 Ariz. at 410, 561 P.2d at 331.

### 2. *Estoppel.*

■ Although Topro cites *Herman Chanen* in the section of its response dealing with the licensing exemption of § 1121(A)(4), the ultimate holding of that case did not rest on a codified exemption to the statute. Instead, the defendant contractor was estopped from asserting that the subcontractor could not file suit since it had *insisted* that the plaintiff "farm out" out work it was not licensed to do. The court limited its holding to estoppel and did not address the question of whether an unlicensed contractor can "farm out" portions of its contract to qualified licensed contractors.[4]

Defendants first attempt to distinguish *Herman Chanen* by claiming the facts of the present case are not as compelling and do not justify estopping McCarthy from asserting the illegality of the contract. If the defense were allowed, the extent of McCarthy's knowledge of Topro's licensing status seems to present a genuine issue of fact. The *Herman Chanen* court also did not say what minimum activities by a defendant would be sufficient to estop it.

■ Defendants also argue alternatively that *Herman Chanen* was decided incorrectly because contracts entered into by unlicensed contractors are void *ab initio*. If such contracts are void and not merely voidable, as the Arizona Supreme Court indicates in *Northen v. Elledge*, then it appears the Arizona Court of Appeals erred in enforcing the contract in *Herman Chanen* by estopping the defendant from asserting § 1153. The defenses of waiver and estoppel cannot be invoked against an agreement which is void as against public policy. *Clark v. Tinnin*, 81 Ariz. 259, 262, 304 P.2d 947, 950 (1956); *Peterson v. Anderson*, 155 Ariz. 108, 113, 745 P.2d 166, 171 (App.1987). Applying the principles endorsed by the Arizona Supreme Court in *Northen* and *Clark*, Topro cannot assert an estoppel defense against Defendants.

### 3. *Licensing Exemption of § 32–1121(A)(4).*

■ Topro next contends that the licensing requirement doesn't even apply to it because it is a manufacturer who does not install equipment. (Topro Response at 3–4). Section 32–1121 lists "persons not required to be licensed:"

A. This chapter shall not be construed to apply to:

.     .     .     .     .

4. Any materialman, manufacturer or retailer furnishing finished products, materials or articles of merchandise who does not install or attach such items or installs or attaches such items if the total value of the sales contract or transaction involving such items and the cost of the installation or attachment of such items to a structure does not exceed seven hundred fifty dollars including labor, materials and all other items. The materialman, manufacturer or retailer shall inform the purchaser that the installation may also be performed by a licensed contractor whose name and address the purchaser may request.

Ariz.Rev.Stat.Ann. § 32–1121(A)(4) (Supp. 1993). The first dispute between the parties concerning this section raises a problem of statutory construction.

Topro reads § 1121(A)(4) as exempting materialmen, manufacturers or retailers 1) who do not install or attach the items they supply or 2) those who install the items if their value is less than $750. Defendants, on the other hand, assert that the $750 limitation should apply to both prongs of the exemption. Under Defendants' reading, if an unlicensed contractor supplies *but does not install* an item which costs $800, it is then in violation of § 1153 and cannot claim the § 1121(A)(4) exemption. Although Defendants assert that the purpose of the section is a "handyman's exemption" to allow gardeners to mow lawns without a license, the legislature has already addressed the needs

---

4. *Herman Chanen*, 6 Ariz.App. at 492–93, 433 P.2d at 809–10: "We do not pass upon any questions involving licensee's answering to the State for any infractions it may have committed against any rules or statutes governing the matter."

of such workers. Section 1121(A)(16) exempts from the § 1151–1153 licensing requirement "[a] person who functions as a gardener by performing lawn, garden, shrub and tree maintenance." Ariz.Rev.Stat.Ann. § 32–1121(A)(16) (Supp.1993).

The earlier text of § 1121(A)(4) said simply that "[a]ny materialman, manufacturer or retailer furnishing finished products, materials or articles of merchandise who does not install or attach such items ..." is exempt. In 1989 the section was amended and this first sentence was extended to include: "... or installs or attaches such items if the total value of the sales contract or transaction involving such items and the cost of installation or attachment of such items to a structure does not exceed seven hundred fifty dollars including labor, materials and all other items." Ariz.Rev.Stat.Ann. § 32–1121(A)(4) (Supp.1993). The amendment appears to be an *expansion* of the exemption to include those engaged in minor installation work along with those who do not install materials at all. The policy goals of § 1151 & 1153 are still well protected by the last sentence of § 1121(A)(4), which mandates that "[t]he materialman, manufacturer or retailer shall inform the purchaser that the installation may also be performed by a licensed contractor whose name and address the purchaser may request." Ariz.Rev.Stat. Ann. § 1121(A)(4) (Supp.1993). The legislature clearly envisioned the circumstances that arose in Topro's case, namely, an unlicensed contractor supplying the equipment and a licensed subcontractor installing it.

For these reasons I do not adopt Defendants' narrow reading of the exemption, and find that Topro can maintain its cause of action as long as it did not perform any installation work at the wastewater treatment plant. On this particular question, Defendants themselves have raised a sufficient question of material fact to defeat their own Rule 56(c) motion:

> Although Topro alleges it performed no installation, its evidence, Exhibit 7 to its Response, shows only $11,610 was subcontracted out. Topro's base subcontract price alone included $26,000 in labor and installation.

(Defs.' Reply Br.Supp.Mot.Summ.J. at 4, n. 2). Defendants therefore call into question whether or not Topro subcontracted out all the installation work. In response, Topro cites affidavits in asserting that it did not install any equipment:

> Topro did not perform on-site installation of the equipment provided by Topro. The only labor performed by Topro on-site in Arizona consisted of Topro technicians assisting in testing, start up and training of operating personnel, which assistance is customarily performed by manufacturers/suppliers. (See Affidavit of Harry Fenz, attached as Exhibit 3 hereto ... See also Exhibit 3, Affidavit of William Heermann).

(Topro Response at 4).

For these reasons, genuine issues of material fact exist under Rule 56(c) as to the amount of installation work Topro performed, which raises the question of whether the statutory exemption applies. I therefore deny Defendants' motion for summary judgment. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is DENIED.