397 P.2d 61

WESTINGHOUSE ELECTRIC CORPORATION, Petitioner,

v.

Allen H. RHODES, Registrar of Contractors of the State of Arizona, Respondent.

No. 8252.

Supreme Court of Arizona.

En Banc.

Nov. 25, 1964.

Holesapple, Conner, Jones, McFall & Johnson, Tucson, for petitioner.

Robert W. Pickrell, Atty. Gen., Richard Duffield, Sp. Asst. Atty. Gen., Tucson, for respondent.

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for Associated General Contractors of America and Arizona Building Contractors, amici curiae.

Julian H. McClure, Tucson, for National Electrical Contractors Assn., amicus curiae.

STRUCKMEYER, Justice.

Petitioner Westinghouse Electric Corporation applied to this Court for an alternative writ of mandamus setting forth that respondent had denied petitioner's application for a contractor's license within the State of Arizona. We accepted jurisdiction, being of the opinion there was no plain, speedy and adequate remedy at law within the meaning of our decision, Rhodes v. Clark, 92 Ariz. 31, 35, 373 P.2d 348, and issued the alternative writ.

Petitioner filed an application for an Arizona State contractor's license, Class A, B and C–11. Pursuant to the provisions of A.R.S. § 32–1121 et seq., a representative of petitioner was examined by respondent. He passed the necessary examination and petitioner was duly advised that it was qualified for a license. Shortly thereafter, protests were filed by the National Electrical Contractors Association and the Southwestern Line Constructors Chapter objecting to the issuance of the license for the reason that petitioner had engaged in

contracting prior to the granting of the license and thus by force of A.R.S. paragraph 3 of subsection B, § 32–1122 was disqualified from issuance of a license.

A hearing was held on the protests and respondent, being of the opinion that petitioner came within the provisions of A.R.S. paragraph 3 of subsection B, § 32–1122, entered an order denying petitioner's application for a license. The undisputed evidence before respondent was that petitioner, while not then licensed, had prepared plans outside the State of Arizona for the construction of two electrical substations for Tucson Gas, Electric Light & Power Company at Tucson, Arizona, had submitted them by mail, and that these plans with some modification had been accepted by both Tucson Gas, Electric Light & Power Company and petitioner at Tucson.

 A.R.S. subsection B of § 32–1122, as amended by Laws of 1961 provides in its relevant part:

"B. To obtain a license under this chapter, the applicant shall file the required fee and bond and meet the following requirements:

\* \* \* \* \* \*

"3. He \* \* \* shall not have engaged in the contracting business without obtaining a license as required by this chapter within one year prior to making the application."

It is respondent's position that the acts of negotiating, preparing and entering into contracts for the construction of the two substations in question are embraced within the language of paragraph 3 of subsection B, § 32–1122 as "engaged in the contracting business". The parties have not cited us to authority construing the phrase "engaged in the contracting business" and we have been unable to discover any where it has been used in a similar context to that of the Arizona statute. We are thus faced with a novel question of law.

The legislature has, in § 32–1101, defined a "contractor" as a person or corporation who for either a fixed sum, price or fee undertakes to or offers to undertake to submit a bid or does himself or by or through others construct, alter or repair any building. Respondent attempts to equate the phrase "engaged in the contracting business" with the acts defining a "contractor" in § 32–1101. We are, however, persuaded that the significant difference in the use of legislative language in § 32–1101 and paragraph 3, subsection B of § 32–1122 requires a different construction.

Had the legislature intended that the words "engaged in the contracting business" meant the same as those acts which define a contractor in § 32–1101, it could

have stated in § 32–1122 that an applicant shall not have acted as a contractor without first obtaining the license required. There would thus have been no question but that § 32–1122 covered the same acts as § 32–1101. This strongly suggests that there was intended a difference between acting as a contractor and engaging in the contracting business.

It is to be recognized and, in this instance, emphasized that in deriving the intention of a statute the effect and consequence and the spirit and reason of the law are fundamental to the ascertainment thereof. Isley v. School District No. 2 of Maricopa County, 81 Ariz. 280, 286, 305 P. 2d 432. In arriving at a decision, if we construed a person as engaged in the contracting business to include those who "undertake to or offer to undertake to, or submit a bid to" (§ 32–1101), we would, for all practical purposes, exclude from the contracting business in Arizona those who are not continuously licensed in this state. The mere offering to undertake or even purporting to have the capacity to undertake would exclude those not then licensed from any discussion or solicitation or taking the most elementary or preliminary steps in preparation for doing business in Arizona unless submitting first to the inconvenience and loss of time which must necessarily occur before an applicant can establish his qualifications and be licensed.

Statutes relating to licensing requirements for contractors are regulatory measures designed for protection of the public against the unscrupulous and unqualified. Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111. But in the instant case, we think that the financial loss which might occur through the negotiation and the execution of a contract, later not fulfilled, is to be weighed against the practical impossibility of a national concern such as petitioner having to qualify as a contractor in the many body politics in the United States before it can "purport to have the capacity to undertake" such a project. The spirit and reason of the law make it unlikely that the legislature intended to impose such a burden which would tend to restrict that free and open competition declared to be the public policy of this state. See Visco v. State ex rel. Pickrell, 95 Ariz. 154, 388 P.2d 155.

We are reinforced in our conclusions by the language of § 32–1151. That section provides:

"It is unlawful for a person, firm, partnership, corporation, association or other organization, or a combination of any of them, to *engage in the business*, act or offer to act in the capacity,

or purport to have the capacity of contractor without having a license therefor as provided in this chapter

* * *" (Emphasis supplied.)

Here, as in § 32–1101, the legislature has enumerated with specificity and particularity. It has recognized that there is a distinction between engaging in the business of contracting and acting or offering to act or purporting to have the capacity of a contractor.

Moreover, here again, the legislature, by drawing a distinction, must have intended a difference. Both § 32–1101 and § 32–1151 explicitly set forth that the acting or offering to act or purporting to have the capacity of a contractor is within the legislative ambit of forbidden acts. The conclusion is compelled that the wording of § 32–1122 was purposeful, the purpose being to create the difference here found to exist. We construe the phrase "engaged in the contracting business" as used in § 32–1122 as limited to acts of construction pursuant to an agreed undertaking.

It is ordered the alternative writ be made permanent.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and SCRUGGS, JJ., concur.