472 P.2d 111

ELECTRIC CONSTRUCTION COMPANY, Appellant,

v.

Kenneth G. FLICKINGER, Registrar of Contractors of the State of Arizona, Appellee.

No. 2 CA–CIV 871.

Court of Appeals of Arizona, Division 2.

July 22, 1970.

Rehearing Denied Sept. 9, 1970.

Review Granted Oct. 13, 1970.

Lawrence K. Bret Harte, Tucson, for appellant.

Gary K. Nelson, Atty. Gen., Lewis & Roca, by John P. Frank, Special Deputy Atty. Gen., Phoenix, for appellee.

KRUCKER, Judge.

This appeal challenges the propriety of injunctive relief (stayed pending appeal) granted to the Registrar of Contractors in proceedings instituted by him to prevent the appellant and other subcontractors from performing certain subcontracts on Davis Monthan Air Force Base without being licensed as contractors in Arizona.

The case was tried to the court, sitting without a jury. Extensive findings of fact and conclusions of law were made and judgment was entered declaring the subcontractors, including appellant, to be subject to the Arizona licensing statutes. An injunction thereafter was issued prohibiting the respective subcontractors from engaging in the business of contracting within the State of Arizona, and, specifically, from conducting any work at Davis Monthan Air Force Base, adjacent to the city limits of Tucson, Arizona, pursuant to their subcontracts. The injunction was stayed for a prescribed period upon condition that an appeal be taken within a specified period of time. Only one of the subcontractors, to wit, Electric Construction Company, has appealed.

The following is a summary of the facts as found by the trial court which we accept as true for lack of attack thereon. Electric Construction Company, a California corporation licensed in California but not in Arizona, was performing work at Davis Monthan [1] pursuant to a subcontract with Forsberg and Gregory, a general contractor, also a California corporation unlicensed in Arizona. Forsberg and Gregory had entered into three separate contracts with the United States Department of the Army Corps of Engineers calling for the construction of airmen's dormitories, an aircraft maintenance dock, an ammunition maintenance shop, an aircraft corrosion control facility, and a weapons calibration shelter.

---

1. Of the 11,200 acres comprising DMAFB, the only claim of federal enclave status is for some 485 acres, which are not involved in this case. Therefore, the Arizona licensing statutes are not vulnerable as an attempt to legislate with regard to transactions occurring within federal enclaves subject to the exclusive jurisdiction of the United States.

The subcontracts were independently entered into by Forsberg and Gregory and there was no requirement of review by the United States as a condition of its awarding the contract to Forsberg and Gregory. There was no direct dealing between the United States and the subcontractors, and anything relating to the performance of their work was taken up with the general contractor. The specialty work to be performed by the subcontractors was of a routine nature and all of the structures which were the subject of the contract would utilize Tucson gas, sewage, and electrical facilities and would connect with and be a general part of the systems which serve the inhabitants of Tucson and its environs.

The Registrar of Contractors, whose duty it is to enforce the contractor licensing laws of the State of Arizona, passes upon license applicants' qualifications to perform various phases of construction work. There are more than 7,000 Arizona licensees, including all types of general and specialty contractors. Qualified applicants, whether resident or non-resident, can obtain licenses in a short period of time. The licensing requirements afford protection to the public in that complaints can be received and processed, service of process can be effected in the event that a claim is asserted, and a contractor's bond is required to be posted.

The trial court also found that much substantial construction is done in Arizona with federal funds and that it is the practice in connection with expenditures through the United States Department of Health, Education and Welfare to bar the applicability of the Arizona tax preference statute, A.R.S. § 34–241, to general contractors but not to subcontractors. Application of the licensing statutes would neither handicap nor unduly burden government construction but, unless enjoined by the court, the subcontractors would continue to contract in Arizona without a license.

The trial court concluded:

\* \* \* \* \* \*

"15. Each of the defendants is engaged in an act of contracting which constitutes a violation of Title 32, A.R.S. ch. 10, and particularly A.R.S. § 32–1151.

16. This Court has jurisdiction to give an injunction in the circumstances under A.R.S. § 32–1166, but in all the circumstances, concludes instead that it would be harsh and inequitable to give an injunction in these circumstances without staying it pending appeal. Therefore, defendants will be directed to apply for Arizona licenses and will meanwhile be enjoined, but the injunction will be stayed pending appeal so that the Court of Appeals may make such disposition of the matter as it sees fit."

Both parties to this litigation admit inability to find a case directly in point, and our independent research has revealed none.

Electric Construction takes the position that the State of Arizona does not have the power to regulate a subcontractor who is in contractual privity with a general contractor having a contract with the United States when the contract is being performed on federal property. It relies on the case of Leslie Miller, Inc. v. State of Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956), which held that a federal contractor was immune from state licensing requirements. The United States Supreme Court stated:

"Mere enumeration of the similar grounds for licensing under the State statute and for finding 'responsibility' under the federal statute and regulations is sufficient to indicate conflict between this license requirement which Arkansas places on a federal contractor and the action which Congress and the Department of Defense have taken to insure the reliability of persons and companies contracting with the Federal Government. Subjecting a federal contractor to the Arkansas contractor license requirements would give the State's li-

censing board a virtual power of review over the federal determination of 're-sponsibility' and would thus frustrate the express federal policy of selecting the lowest responsible bidder." 77 S.Ct. at 258–259.

The United States Supreme Court has held that, unless Congress provides to the contrary, a contractor who erects a government post office does not share any governmental immunity and is subject to the provisions as to types of material, fire hazards and the like which are covered by the New York City Building Code. *See,* James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940). It has also held that a state may impose a non-discriminatory tax on the activities of a contractor for the federal government. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937); Trinityfarm Const. Co. v. Grosjean, 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918 (1934); Atkinson v. State Tax Commission of Oregon, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621 (1938); State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941); Wilson v. Cook, 327 U.S. 474, 66 S.Ct. 663, 90 L.Ed. 793 (1946). Other cases which have sustained state regulations in the face of a claim of governmental immunity are: Polar Ice Cream & Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964); Railway Mail Ass'n v. Corsi, 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945).

In the case of Fublic Utilities Commission of State of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958), the Court indicated that only when there is a clear conflict between the federal policy and the state regulation the latter must yield. *See also,* Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.

292 (1963). However, the trend is not to extend governmental immunity from state regulation beyond the federal government itself and governmental functions performed by officers and agen's of the government. Penn Dairies v. Milk Control Commission of Pennsylvania, 318 U.S. 261, 63 S.Ct. 671, 87 L.Ed. 748 (1943).

■ Competitive bidding is the cornerstone of the federal procurement policy. United States v. Warne, 190 F.Supp. 645 (N.D.Cal.1960). However, *Miller,* supra, denounces only state interference with the federal government's determination of whether a particular bidder is a "responsible bidder." [2]

■ As to subcontractors such as Electric Construction, however, we find no expression of federal policy with respect to determination of subcontractors' responsibility. When a state attempts to require qualifications in addition to those that the federal government has pronounced sufficient, federal supremacy controls. Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920). Such is not the situation here. We hold, therefore, that there is no conflict between our licensing requirements as to subcontractors and the federal statutes and regulations, hence the Registrar of Contractors may lawfully require a subcontractor to obtain a license as a condition precedent to engaging in contracting within the state. *See,* Grand Canyon Airlines, Inc. v. Arizona Aviation, Inc., 12 Ariz.App., 252, 469 P.2d 486 (1970).

Electric Construction also contends that the granting of an injunction was "a harsh and inequitable remedy." A.R.S. § 32–1166 provides:

"In addition to all other remedies, when it appears to the registrar either

---

2. 10 U.S.C.A. § 2305(c) provides:
"Bids shall be open publicly at the time and place stated in the advertisement. Awards shall be made with reasonable promptness by giving written notice *to the responsible bidder* whose bid conforms

to the invitation and *will be most advantageous to the United States, price and other factors considered.* However, all bids may be rejected if the head of the agency determines that rejection is in the public interest." (Emphasis added.)

**504**

upon complaint or otherwise, that any person, firm, partnership, corporation, association or other organization, or a combination of any of them that does not hold a state contractor's license in any classification, has engaged in, or is engaging in any act of contracting, practice or transaction which constitutes a violation of this chapter or any rule, regulation or order of the registrar, the registrar may, either through the attorney general or through the county attorney of the county in which the act, practice or transaction is alleged to have been committed, apply to the superior court of that county for an injunction restraining such person from engaging in such act, practice or transaction, or doing any act in furtherance thereof, and, upon a proper showing, a temporary restraining order, a preliminary injunction or a permanent injunction shall be granted without bond.  *  *  * "

Thus, we see that an injunction is specifically authorized by statute when it is shown that a person is engaging in an act of contracting without a license. Encylopaedic authority indicates that, under these circumstances, a positive duty is imposed upon the court to grant injunctive relief. 42 Am.Jur.2d Injunctions § 38. However, from the record before us, we are unable to determine whether Electric Construction has complied with the trial court's directive to procure a license. We therefore affirm the judgment as it pertains to the license requirement and remand the case to the trial court for the limited purpose of determining whether injunctive relief is appropriate.

Judgment affirmed.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Chief Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.