485 P.2d 547

**ELECTRIC CONSTRUCTION CO., Inc., Appellant,**

v.

**Kenneth G. FLICKINGER, Registrar of Contractors of the State of Arizona, Appellee.**

**No. 10187–PR.**

Supreme Court of Arizona,
In Banc.

May 27, 1971.

Rehearing Denied June 22, 1971.

Gary K. Nelson, Atty. Gen., Phoenix, Lewis & Roca, by John P. Frank, Special Deputy Attys. Gen., Phoenix, for appellee.

Lawrence K. Bret Harte, Tucson, for appellant.

STRUCKMEYER, Chief Justice.

The question on this appeal is whether a subcontractor who works on a federal job in Arizona is required to obtain a State contractor's license. The trial court answered this question in the affirmative, and enjoined certain subcontractors who were not licensed in Arizona from performing contracts at Davis Monthan Air Force Base in Tucson, Arizona. The injunctions were stayed pending the appeal of the Electric Construction Co., Inc., one of the subcontractors. We granted review. Opinion of the Court of Appeals, 12 Ariz. App. 500, 472 P.2d 111, vacated. Judgment of the Superior Court reversed.

The Electric Construction Company, a California corporation, is unlicensed in Arizona. It engaged in certain construction at the Davis Monthan Base pursuant to subcontracts with the general contractor, Forsberg and Gregory, also a California corporation unlicensed in Arizona. The jobsites at the Davis Monthan Base admit-

tedly do not have federal enclave status. 40 U.S.C. § 255.

The U. S. Supreme Court in Leslie Miller Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231, held that a prime contractor, similar to the general contractor in this case, could not be fined because it worked on a federal jobsite in Arkansas and failed to obtain a license from the Arkansas Contractors Licensing Board. The Arkansas licensing law set forth certain factors which the contractors licensing board had to consider in its determination of the qualifications of an applicant for a contractor's license—experience, ability, character, the manner of performance of previous contracts, financial condition, equipment, any fact tending to show ability and willingness to conserve the public health and safety. Arizona has like qualifications and others. A.R.S. § 32–1122.

The Supreme Court was of the opinion that the Arkansas licensing statutes conflicted with the Armed Services Procurement Act of 1947, 10 U.S.C. § 2305(c), providing that awards on advertised bids shall be made to the "lowest bidder" and the Procurement Regulations adopted pursuant to the Act set forth these guiding considerations defining a responsible contractor:

"(a) Is a manufacturer, construction contractor, or regular dealer * * *

(b) Has adequate financial resources, or ability to secure such resources;

(c) Has the necessary experience, organization, and technical qualifications, and has or can acquire the necessary facilities (including probable subcontractor arrangements) to perform the proposed contract;

(d) Is able to comply with the required delivery or performance schedule (taking into consideration all existing business commitments);

(e) Has a satisfactory record of performance, integrity, judgment, and skills; and

(f) Is otherwise qualified and eligible to receive an award under applicable laws and regulations." 77 S.Ct. at 258, 1 L.Ed.2d at 232–233.

It has been repeatedly held that regulations such as these have the force of law, see e. g., Public Utilities Commission of State of Cal. v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; hence, the Court reasoned that the different requirements would give the state board a virtual power of review over the federal determination of responsibility, thus frustrating the "expressed federal policy of selecting the lowest responsible bidder."

Obviously, where the government makes a direct determination of a subcontractor's responsibility, Miller v. Arkansas would be controlling; but where the federal government does not make a direct determination, can the principle of the case extend to a subcontractor to relieve him from complying with the state law? We think so.

No precedent has been cited to us on this precise issue. Perversely, the Supreme Court of the United States has twice reached, but has not answered the analogous question of whether a state can regulate prices between a producer of milk and his distributor where the distributor sells the milk to the United States at a federal military installation. Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed. 2d 292; Polar Ice Cream & Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389. State regulation of milk prices between such a distributor and the United States is, of course, now recognized as a burden on the exercise by the United States of its power to maintain the armed forces and regulate federal territory through the use of procurement regulations. Paul v. United States, supra.

The Armed Services Procurement Regulations provide that determinations concerning prospective subcontractors' responsibility "shall generally be a function performed by the prospective prime contractor." The government may, however, de-

**224**

termine the responsibility of subcontractors to the same extent and on the same basis as the prime contractor. The regulations provide:

"Notwithstanding the general responsibility of a prospective contractor to demonstrate the responsibility of his prospective subcontractors, it may be in the Government's best interest to make a direct determination of the responsibility of one or more prospective subcontractors prior to award of the prime contract. * * * The determination of responsibility of a proposed subcontractor by the Government shall be based on the same factors as are applicable in a determination of responsibility of a prospective prime contractor." Armed Services Procurement Regulations, 32 CFR § 1.906(b) (1970).

The regulation recognizes that subcontractors are first the responsibility of the prime contractor, but in the end are but another arm of and, hence, the responsibility of the federal government.

The rationale for the decision in Miller v. Arkansas was expressed in a quote from Johnson v. Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126, that if instrumentalities of the United States must desist from performance of their duties until they satisfy a state officer of their competence, qualifications are added to those which the federal government has pronounced sufficient. Arizona's qualifications would result in the identical conflict which was found to frustrate the federal policy of selecting the lowest responsible bidder whenever the government makes a direct determination of the responsibility of a prospective subcontractor. The federal policy, of course, will not be frustrated in those cases where the government does not invoke the provisions of the Armed Service Procurement Regulations to determine the responsibility of the subcontractor. But this is wholly aside from the issue here. The burden which may be imposed could in some instances frustrate the express federal policy. It is not the fact that there may not be a conflict concerning subcontractors' responsibility; it is the fact that there may be.

We hold Arizona's contractor's licensing act has no application to subcontractors engaged in the performance of duties for the benefit of the United States.

Judgment reversed.

HAYS, V. C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.