**URBATEC, a California Corporation, Plaintiff-Appellee,**

v.

**YUMA COUNTY, an Arizona County, Defendant-Appellant.**

No. 76–3299.

United States Court of Appeals, Ninth Circuit.

Jan. 14, 1980.

Rehearing Denied March 24, 1980.

Jeffrey B. Smith, Phoenix, Ariz., for defendant-appellant.

Novak, Cooper & Wohlgemuth, Los Angeles, Cal., Lewis & Roca, Phoenix, Ariz., on brief; Mark S. Novak, Los Angeles, Cal., for plaintiff-appellee.

Before TRASK and HUG, Circuit Judges, and BOHANON,* District Judge.

TRASK, Circuit Judge:

Plaintiff-Appellee Urbatec, a California corporation specializing in the development of subsidized housing projects, sued Yuma County, Arizona for breach of contract.

---

* Honorable Luther L. Bohanon, United States District Judge for the Northern, Eastern & Western Districts of Oklahoma, sitting by designation.

Yuma County had invited proposals for the construction of 120 units of federally subsidized housing and tentatively accepted Urbatec's proposal by a letter dated June 14, 1972. Urbatec contends that this letter, together with Urbatec's proposal for the project, constitute a contract which was breached by Yuma County when, on November 10, 1972, it informed Urbatec that it should take no further action on the project. On December 4, 1972, the Yuma County Board of Supervisors formalized this decision by rejecting the project. As of December 4, 1972, Urbatec was not licensed as a contractor in Arizona, nor had it qualified as a foreign corporation doing business in Arizona.

The action was tried to the district Court sitting without a jury. Jurisdiction in the trial court was based upon diversity of citizenship. In its Findings of Fact and Conclusions of Law, that court concluded that the letter of June 14 did constitute a contract, that Yuma County breached that contract, and that Urbatec was damaged to the extent of $256,766 in expenses and lost profits. The district court concluded that as of December 4, 1972, when Yuma County refused to proceed with the project, Urbatec was required neither to have a contractor's license, nor to have qualified as a foreign corporation doing business in Arizona. Judgment for Urbatec was entered on July 12, 1976, to the full extent of its damages.

Yuma County brings this appeal from the district court's judgment pursuant to 28 U.S.C. § 1291, raising a number of issues. Because we hold that Urbatec was required by Arizona law to have a contractor's license prior to submitting its proposal, we reverse.

### I

Ariz.Rev.Stat. § 32–1151 provides in pertinent part:

It is unlawful for a person, firm, partnership, corporation, association or other organization, or a combination of any of them, to *engage in the business, act or offer to act in the capacity, or purport to have the capacity of a contractor* without having his own license in his own name therefor as provided in this chapter, unless the person, firm, partnership, corporation, association or other organization is exempt as provided in this chapter. (emphasis supplied).

The term "contractor" is defined by Ariz. Rev.Stat. § 32–1101 to mean:

[A] person, firm, partnership, corporation, association or other organization, or a combination of any of them, who *undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to,* or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith. (emphasis supplied).

These provisions have been construed as barring any suit to recover for services for which a license is required. *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951); *Hunt v. Douglas Lumber Co.,* 41 Ariz. 276, 17 P.2d 815, 819–20 (1933). This bar on actions by unlicensed contractors has also been codified.[1]

Urbatec contends, however, that the licensing requirement is not applicable until actual construction commences, citing *Westinghouse Electric Corp. v. Rhodes,* 97 Ariz. 81, 397 P.2d 61 (1964). Urbatec's argument is unconvincing. In *Westinghouse Electric,* the court was concerned with a

---

1. Ariz.Rev.Stat. § 32–1153 provides in part:

No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without

alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

different statute, Ariz.Rev.Stat. § 32–1122, which sets forth the requirements for obtaining a contractor's license. One of those requirements, paragraph 3 of subsection B, § 32–1122,[2] disqualifies any contractor who "engaged in the contracting business without obtaining a license as required by this chapter within one year prior to making the application." The court in *Westinghouse Electric* concluded that "engaged in the contracting business" meant more than merely negotiating or submitting a bid. The court limited the meaning of the phrase to "acts of construction pursuant to an agreed undertaking." *Westinghouse Electric,* 397 P.2d at 63. Urbatec, however, can take no comfort from this holding. First, the statutes barring it from suing for damages are sections 32–1101, 1151, and 1153, not section 32–1122. In fact, the court in *Westinghouse Electric,* in comparing the language of the statutory provisions, noted that the application of sections 32–1101 and 1151 was considerably broader than that of section 32–1122. Second, and more important, section 32–1122 was amended after the *Westinghouse Electric* decision to broaden its application and make it expressly applicable to contractors who do no more than submit a bid. See Chapter 66, H.B. 171 § 1, 1965 Ariz.Sess.Laws.[3]

Consequently, under Ariz.Rev.Stat. §§ 32–1101 and 1151, Urbatec violated Arizona law by submitting its proposal without first obtaining a contractor's license, as provided in section 32–1153, and, that violation precludes Urbatec from suing for compensation for its contracting services. The impact of that violation on Urbatec's ability to obtain a license during the ensuing year (the issue decided in *Westinghouse Electric* ), is not relevant here since the contract is void *ab initio. Hunt v. Douglas Lumber Co., supra.*

**2.** Ariz.Rev.Stat. § 32–1122 was repealed by Ch. 113, § 6 1975 Ariz.Sess.Laws. Section 32–1122 was reenacted by the 1975 act in an amended form so that subsection (E) of section 32–1122 now relates to the same subject matter as the earlier subsection (B) ¶ 3.

**3.** The legislature amended the pertinent provisions of Ariz.Rev.Stat. § 32–1122(B) ¶ 3 to provide:

■ The inability of Urbatec to sue for compensation precludes not only actions grounded in contract, but those founded on a theory of promissory estoppel as well. Permitting Urbatec to recover on promissory estoppel grounds would circumvent the policies of the licensing statute.

The purpose of licensing building contractors is for the protection of the public. *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951). The legislature gave to the Registrar of Contractors the duty to require that those involved in constructions of structures and improvement to real property have the required skill, training and ability to accomplish such construction in a safe and workmanlike fashion.

*Arnold Construction Co. v. Arizona Board of Regents,* 109 Ariz. 495, 512 P.2d 1229, 1232 (1973).

In addition, the licensing statutes require insurance, Ariz.Rev.Stat. § 32–1122(B)(2), and surety bonds, Ariz.Rev.Stat. § 32–1152. All of these requirements, taken together, are designed to protect members of the general public without regard to the impact upon individual contractors. *See Murphy v. Campbell Investment Co.,* 79 Wash.2d 417, 486 P.2d 1080, 1087–88 (1971) (Stafford, J., dissenting) (construing licensing statute substantially similar to Arizona's). Permitting Urbatec to recover on promissory estoppel grounds would circumvent these policies of protecting the public from unscrupulous, unqualified, or underinsured contractors.

In *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951), an action was brought on grounds of quantum meruit. The court held that action, instituted to recover the

[A license applicant] . . . shall not have engaged in the contracting business *nor shall he have submitted a bid* within one year prior to making the application on any contracting work without first having been issued a license as required by this chapter. Ch. 66, § 1 1965 Ariz.Sess.Laws (emphasis supplied).

value of goods and services rendered, barred by the licensing statute, saying:

It may be urged that the court should exercise its equitable discretion and permit the plaintiff recovery even in face of a specific prohibition in the statute on the ground that an unreasonable forfeiture would result. However, the statute requiring a contractor to possess a contractor's license before he may recover for work done was designed for the protection of the public and must not be defeated in order to accommodate one who has violated the provisions of the statute. Permitting an unlicensed contractor to recover on the ground that a loss would result to him otherwise would completely nullify the statute since every unlicensed contractor would sustain a loss or forfeiture unless he were allowed recovery. The remedy, if any, lies with the legislature. As the law stands, the court cannot countenance such a result.

*Northen,* 232 P.2d at 116. Similarly, this court cannot approve a judgment in favor of Urbatec whether based upon contract or promissory estoppel. Urbatec's failure to obtain an Arizona contractor's license before submitting its proposal renders any agreement or promise void and no suit may be sustained thereon.[4] The judgment of the district court is REVERSED.

---

4. It has been suggested that the Arizona Supreme Court's decision in *Electric Construction Co. v. Flickinger,* 107 Ariz. 222, 485 P.2d 547 (1971) renders the state licensing statutes inapplicable to Urbatec. We disagree. Unlike the contractor in *Flickinger,* Urbatec is not a subcontractor of the federal government, but a contractor of the State of Arizona. Applying the state licensing statute in this case could not frustrate any federal interest and would advance the state's proprietary interest in choosing its own contractor, as well as safeguard the public welfare. The limited federal interest involved would be similarly advanced. There being no actual or potential conflict with federal interests, the Arizona licensing statutes are applicable to Urbatec.