940 F.2d 437
 37 Cont.Cas.Fed. (CCH) 76,149
 GARTRELL CONSTRUCTION INCORPORATED, a California
corporation, Plaintiff-Appellee,
v.
Lloyd AUBRY, Chief, Division of Labor Standards Enforcement,
Department of Industrial Relations, State of
California, Defendants-Appellants.
 No. 90-15190.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1991.
Decided July 25, 1991.
 
 H. Thomas Cadell, Jr., Dept. of Industrial Relations, San Francisco, Cal., for defendants-appellants.
 Michael J. Lederman, Haas & Najarian, San Francisco, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, GOODWIN and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 This case arises from the attempt of the State of California to enforce its contractors' licensing requirements against a construction contractor performing work for the federal government. The district court enjoined California from enforcing its law. California appeals.
 
 FACTS
 
 2
 Gartrell, a general construction contractor, performed work for the United States Department of the Navy at the Marine Corps Air Station located at El Toro, California. As a contractor with the federal government, Gartrell had met the requirements of "responsibility" imposed on such contractors under the Federal Acquisition Regulation, 48 C.F.R. Sec. 52.236-7 (1990).
 
 
 3
 Gartrell did not obtain a California contractor's license; Gartrell believed that, as a contractor performing work exclusively for the federal government, it was exempt from California's license requirement. State authorities cited Gartrell for violating California Labor Code section 1021. Section 1021 provides that any person who does not hold a valid state contractor's license, and who employs persons to perform services for which a contractor's license is required, shall be subject to civil penalties of $100 per employee for each day of such employment. California assessed civil penalties in the amount of $57,600 against Gartrell. Pursuant to Labor Code section 1023, a judgment in this amount was entered in Superior Court.
 
 
 4
 Gartrell sought injunctive and declaratory relief in federal district court from California's assessment. California contended that the federal district court was required to abstain from exercising jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court rejected this claim. The district court then enjoined California from enforcing Labor Code section 1021 against Gartrell, holding that such application was preempted by federal law under the precedent of Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956).
 
 
 5
 Because the preemption issue in this case turns out to be dispositive of the abstention issue, we address it first.
 
 PREEMPTION
 
 6
 Thirty-five years ago, the United States Supreme Court ruled on the issue before us today: whether a contractor performing services on a federal construction project can be required by the state to obtain a license from the state's contractor's licensing board. The Court held that a state licensing requirement is invalid as applied against a contractor with the federal government because it results in interference with federal government functions and is in conflict with federal procurement legislation; its application is therefore precluded by the Supremacy Clause of the United States Constitution. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956).
 
 
 7
 In Leslie Miller, the contractor performed construction on an Air Force base in Arkansas. The contractor was prosecuted and fined by the state for working as a contractor without having obtained an Arkansas contractor's license. The fine was upheld by the Arkansas state courts. On appeal, the United States Supreme Court reversed. The Court found that the Arkansas statute requiring licensing of the contractor interfered with the federal government's power to select contractors and to schedule construction, and therefore was in conflict with the federal law regulating procurement. Id. at 188, 77 S.Ct. at 257. Important to the Supreme Court was the fact that the federal agency granting the contract was required by federal law to make an initial business judgment as to whether bidders on federal projects are "responsible." Id. The Court reviewed the factors which go into the federal government's responsibility determination,[1] and found that the Arkansas licensing law set forth similar factors for determining the qualifications of applicants for a state contractor's license.[2] Id. at 189, 77 S.Ct. at 258. The Court held the state law to be preempted by federal law:
 
 
 8
 Mere enumeration of the similar grounds for licensing under the state statute and for finding "responsibility" under the federal statute and regulations is sufficient to indicate conflict between this license requirement which Arkansas places on a federal contractor and the action which Congress and the Department of Defense have taken to insure the reliability of persons and companies contracting with the Federal Government. Subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of "responsibility" and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder.
 
 
 9
 Id. at 189-90, 77 S.Ct. at 258-59.
 
 
 10
 The case before us parallels Leslie Miller. The factors California considers before granting a California contractor's license are similar to those the federal government considers in determining responsibility. The California Contractor's License Board investigates, examines, and classifies contractors according to their degree of knowledge and experience in particular trades and according to their general knowledge of the building, safety, health and lien laws of the state. The applicant for such a license must be of good character and demonstrate financial responsibility. See e.g., Cal.Bus. & Prof.Code Secs. 7067.5, 7068, 7069 and 7071.5 (West 1989). Similarly, the Federal Acquisition Regulations (FAR) require the prospective contractor to have adequate financial resources, to be able to comply with the performance schedule, to have a satisfactory record of integrity and business ethics. 48 C.F.R. Sec. 9.104-1 (1990). The similarity of factors makes clear that California, through its licensing requirements, is effectively attempting to review the federal government's responsibility determination. That review is prohibited by Leslie Miller.
 
 
 11
 California, however, asks us to distinguish its licensing statute from the Arkansas licensing statute at issue in Leslie Miller. It argues that the Arkansas statute precluded contractors from contracting with the United States by placing a condition precedent on their right to bid, whereas the California statute does not require the bidding contractor to comply with the state licensing law until after it has been awarded the contract, thus leaving the federal government free to shop for the most favorable bidder. California contends that to apply the Leslie Miller rule to this case would require us to extend that rule. We do not read Leslie Miller so narrowly. The concern in Leslie Miller was that a state was asserting a right or power of review over the federal government's determination of "responsibility." The Court did not focus on the distinction between bidding and performance but on the state's interference with the federal government's responsibility determination. That interference occurs when, as here, the state requires a contractor with the federal government to comply with its licensing laws even if that requirement is not enforced until after performance has begun. Contrary to California's suggestion, we do not here extend Leslie Miller; we simply hold that Leslie Miller directly applies to the facts of this case.[3]
 
 
 12
 California makes one final argument in its attempt to establish that section 1021 is not preempted by federal law. Gartrell's contract with the federal government contained a Permits and Responsibilities Clause as prescribed by the Federal Acquisition Regulations. See 48 C.F.R. Sec. 52.236-7 (1990). The Permits and Responsibilities Clause provided:
 
 
 13
 The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work ...
 
 
 14
 California argues that, by revising the wording of the Permits and Responsibilities Clause into its present form several years after the Leslie Miller decision, the federal government gave a clear signal that federal contractors are subject to state licensing laws. We reject this argument as well.
 
 
 15
 The clause in effect when Leslie Miller was decided provided: "The Contractor shall, without additional expense to the government, obtain all required licenses and permits ..." (1951 revision) (emphasis added). The clause was revised in 1962 to read as it does today. We disagree with California's contention that the change in wording in the clause alters the strong mandate of Leslie Miller. The federal contractor is currently required to obtain any necessary licenses and comply with any applicable state laws, codes and regulations. Following Leslie Miller, state licensing laws cannot be "applicable", nor compliance with them "necessary", where such laws are preempted by federal law.
 
 
 16
 We do not find in the minor changes and word additions in the Permits and Responsibilities clause the required "clear Congressional mandate" and "specific Congressional action" that unambiguously authorize state regulation of a federal activity.[4] See Hancock v. Train, 426 U.S. 167, 178-79, 96 S.Ct. 2006, 2012-13, 48 L.Ed.2d 555 (1976). Moreover, we have been shown no legislative or regulatory history to support California's contention that Congress intended the 1962 revisions to overrule Leslie Miller.
 
 
 17
 The Leslie Miller rule, then, has the full force that it had when announced in 1956. Gartrell, as a contractor with the federal government, is exempt from California's licensing requirements. Because the federal government made a direct determination of Gartrell's responsibility, California may not exercise a power of review by requiring Gartrell to obtain state licenses. To hold otherwise would interfere with federal government functions and would frustrate the federal policy of selecting the lowest responsible bidder.
 
 YOUNGER ABSTENTION
 
 18
 Initially, California moved for dismissal under the doctrine of abstention as enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court denied the motion because California failed to establish the Younger prerequisites. We review the district court's decision de novo. World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1081 (9th Cir.1987).
 
 
 19
 Younger is an exception to the usual rule that federal courts should exercise the jurisdiction conferred on them by statute. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); Champion Int'l. Corp. v. Brown, 731 F.2d 1406, 1408 (9th Cir.1984). The exception is based on a strong policy of avoiding federal interference in pending state proceedings enforcing state public policy. See Younger, 401 U.S. at 44, 91 S.Ct. at 750; Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Not every such state proceeding requires federal abstention, however.
 
 
 20
 The Supreme Court has set out a three-pronged test for determining whether Younger abstention is appropriate. Middlesex, 457 U.S. 423, 102 S.Ct. 2515. Abstention is appropriate if (1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. Id. at 432. Because no important state interest is implicated here, we need not consider the other elements of the test.
 
 
 21
 No significant state interest is served where the state law is preempted by federal law and that preemption is "readily apparent." Champion Int'l Corp. v. Brown, 731 F.2d 1406 (9th Cir.1984). See Fresh Int'l Corp. v. Agricultural Labor Relations Bd., 805 F.2d 1353, 1361 (9th Cir.1986). In such a case, the state tribunal is acting beyond its authority and Younger abstention is not required. In Champion, we held that the state did not have a substantial interest in enforcing its age discrimination laws because it was readily apparent that those laws were preempted by ERISA. Champion, 731 F.2d at 1408-09. Champion was decided shortly after the Supreme Court announced in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), that a state law similar to that challenged in Champion was preempted by the Employment Retirement Income Security Act of 1974 (ERISA). As we have explained above, the Supreme Court announced nearly thirty-five years ago that a law similar to California Labor Code section 1021 was preempted by federal law. See Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956). The passage of time has not weakened that announcement. Preemption is readily apparent under Leslie Miller; the district court properly declined to abstain under Younger.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The Armed Services Procurement Act of 1947, 10 U.S.C. Sec. 2305(c), providing that awards on advertised bids shall be made to the "lowest bidder," and the Procurement Regulations promulgated under the Act set forth a list of guiding considerations, defining a responsible contractor as one who:
 (a) Is a manufacturer, construction contractor, or regular dealer ...
 (b) Has adequate financial resources, or ability to secure such resources;
 (c) Has the necessary experience, organization, and technical qualifications, and has or can acquire the necessary facilities (including probable subcontractor arrangements) to perform the proposed contract;
 (d) Is able to comply with the required delivery or performance schedule (taking into consideration all existing business commitments);
 (e) Has a satisfactory record of performance, integrity, judgment, and skills; and
 (f) Is otherwise qualified and eligible to receive an award under applicable laws and regulations.
 Leslie Miller, Inc. v. Arkansas, 352 U.S. at 188-89, 77 S.Ct. at 257-58 (citing 32 C.F.R. Sec. 1.307 and 32 C.F.R. Sec. 2.406-3).
 
 
 [2]
 The Arkansas licensing law set forth factors to guide the Contractors Licensing Board:
 The Board, in determining the qualifications of any applicant for original license ... shall, among other things, consider the following: (a) experience, (b) ability, (c) character, (d) the manner of performance of previous contracts, (e) financial condition, (f) equipment, (g) any other fact tending to show ability and willingness to conserve the public health and safety, and (h) default in complying with the provisions of this act ... or any other law of the State....
 Ark.Stat., 1947, Sec. 71-709, cited in Leslie Miller, 352 U.S. at 189, 77 S.Ct. at 258.
 
 
 [3]
 Our conclusion is in agreement with other cases following and interpreting Leslie Miller. In Electric Construction Co. v. Flickinger, 107 Ariz. 222, 485 P.2d 547, cert. denied, 404 U.S. 952, 92 S.Ct. 285, 30 L.Ed.2d 269 (1971), the Arizona Supreme Court applied the Leslie Miller rule to a subcontractor at an Air Force base, holding that Arizona could not require that subcontractor to obtain a state contractor's license. Even though the government had not made a direct determination of the subcontractor's responsibility, it was enough for the court that the government "may" determine the responsibility of subcontractors. The court's focus was not on bidding versus performance; the subcontractor was not involved in the bidding process with the federal government. Rather the court focused on the impermissible burden that would result if states were permitted to impose their licensing requirements on contractors with the federal government. The court noted that "if instrumentalities of the United States must desist from performance of their duties until they satisfy a state officer of their competence, qualifications are added to those which the federal government has pronounced sufficient." Id. at 224, 485 P.2d 547
 In Airport Constr. & Materials, Inc. v. Bivens, 279 Ark. 161, 649 S.W.2d 830 (1983), the Arkansas Supreme Court also applied the Leslie Miller rule to subcontractors on federal contracts. It did so even though the subcontract was made seven months after the prime contract was awarded. According to the court, the expressed federal policy of selecting the lowest responsible bidder would have been frustrated by subjecting even the subcontractor to state regulations. Id., 649 S.W.2d at 832.
 In Peter Kiewit Sons' Co. v. State Bd. of Equalization, 161 Mont. 140, 505 P.2d 102 (1973), the Montana Supreme Court held that a state statute which pertained to qualifications or competence of a public contractor was not applicable to federal contractors. The court did not elaborate on its rationale, but relied on Leslie Miller.
 
 
 [4]
 The Supreme Court has interpreted the Supremacy Clause of the Constitution as follows:
 Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent that there is a "clear congressional mandate," "specific congressional action" that makes this authorization "clear and unambiguous."
 Hancock v. Train, 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976) (citations omitted).